UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

EUGENE HOLLEY,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                    Defendant.

CASE NO. 2:17-CV-00771-RAJ-JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

NOTING DATE: AUGUST 17, 2018

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. *See* Dkt. 14, 21, 25.

After considering and reviewing the record, the Court recommends that the district court remand this case because the ALJ erred in evaluating plaintiff's credibility. The ALJ gave an unfavorable credibility determination because plaintiff, purportedly, did not have significant trouble ambulating, did not seek consistent treatment, only sought treatment to maintain state benefits, had a limited work history, reported daily activities inconsistent with the alleged severe symptoms, and because plaintiff had a criminal history. The ALJ's reasons for rejecting plaintiff's credibility were not based on substantial evidence. The ALJ seemingly engaged in

1    cherry-picking to achieve a finding of non-disability and did not properly consider plaintiff's

2    mental impairments in her determination that plaintiff sought treatment intermittently. Finally,

3    the ALJ did not properly evaluate whether plaintiff's daily activities contradict plaintiff's other

4    testimony or met the threshold for transferrable work skills. This credibility determination was

5    not harmless error because a more favorable credibility determination may have resulted in a

6    different disability determination.

7                                        BACKGROUND

8        Plaintiff, EUGENE HOLLEY, was born in 1969 and was 42 years old on the alleged

9    disability onset date of July 1, 2012. AR. 285-94. Plaintiff graduated from high school and has

10    no further education or training.  AR. 83. Plaintiff has a limited work history in grounds

11    maintenance, as a delivery driver, and in a warehouse.  AR. 83. He stopped working at his last

12    job when the wound on his Achilles reopened.  AR. 84.

13        According to the ALJ, plaintiff has at least the severe impairments of "left Achilles

14    rupture residual from surgeries with ulceration, obesity, cognitive disorder, bipolar disorder

15    versus depression, posttraumatic stress disorder (PTSD), and personality disorder (20 CFR

16    416.920(c))." AR. 24.

17        At the time of the hearing, plaintiff was living with his partner.  AR. 83.

18                                    PROCEDURAL HISTORY

19        Plaintiff's first application for Supplemental Security Income ("SSI") benefits pursuant to

20    42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was partially favorable and resulted

21    in a finding that plaintiff was disabled from March 1, 2009 through May 31, 2010, but because

22    medical improvement occurred, he was no longer disabled after June 1, 2010. AR. 21, 112-37.

23    Plaintiff's second application for SSI benefits was denied initially and following reconsideration.

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

1    AR. 139-51, 153-68. Plaintiff's second requested hearing was held before Administrative Law

2    Judge Stephanie Martz ("the ALJ") on June 16, 2015. AR. 75-111. On September 18, 2015, the

3    ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled

4    pursuant to the Social Security Act. AR.18-45.

5        On March 23, 2017, the Appeals Council denied plaintiff's request for review, making

6    the written decision by the ALJ the final agency decision subject to judicial review. AR. 1-7; *see*

7    20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's

8    written decision in May, 2017. Dkt. 5.  Defendant filed the sealed administrative record

9    regarding this matter ("AR.") on October 13, 2017. Dkt. 11.

10                    STANDARD OF REVIEW

11        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

12    social security benefits if the ALJ's findings are based on legal error or not supported by

13    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

14    Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

15                        DISCUSSION

16        Plaintiff's primary assertion is that the ALJ's decision is not supported by substantial

17    evidence. Dkt. 14, p.1. Plaintiff subsequently itemizes his claims in detail. *Id.*  The issue of

18    credibility is addressed first, as it is dispositive.

19    **I.        Plaintiff alleges that the ALJ's characterization of the evidence is inaccurate,
           leading to an improper credibility determination.**

20

21        Plaintiff alleges that the characterization of the evidence is factually inaccurate. Dkt. 14,

22    p.5. Plaintiff further alleges that the ALJ's mischaracterization of the evidence creates a

23    "credibility issue where none should be found." Dkt. 14, p.5.  The ALJ rejected plaintiff's

24    testimony as to the limiting effects of both his mental and physical impairments because "there

1    are inconsistencies in the claimant's reports, and [plaintiff's] medical records are inconsistent

2    with his statements." AR. 29.

3         If an ALJ rejects the testimony of a claimant once an underlying impairment has been

4    established, the ALJ must support the rejection "by offering specific, clear and convincing

5    reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v.*

6    *Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). As with all of the findings by the ALJ, the specific,

7    clear and convincing reasons also must be supported by substantial evidence in the record as a

8    whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)

9    (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Regarding the question of whether or

10   not substantial evidence supports the findings by the ALJ, the Court should "review the

11   administrative record as a whole, weighing both the evidence that supports and that which

12   detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)

13   (*citing Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989)).  Although an ALJ may not

14   discredit a plaintiff's testimony as not supported by objective medical evidence once evidence

15   demonstrating an impairment has been provided, *Bunnell v. Sullivan,* 947 F.2d 341, 343, 346-47

16   (9th Cir. 1991) (*citing Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), an ALJ may

17   discredit a plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson*

18   *v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

19        A.  *The ALJ rejected plaintiff's testimony regarding his physical impairment.*

20        In 2009, plaintiff was found to be under disability due to his Achilles impairment, but

21   later experienced medical improvement. AR. 21. At the time of the hearing, plaintiff's Achilles

22   wound was still open and he required the use of a wound vacuum. AR 29. Plaintiff's testimony

23   regarding his limitation was that he was unable to stand for more than five minutes, could only

24

1   walk a short distance, and needed to elevate his foot throughout the day. AR. 29. The ALJ

2   rejected plaintiff's testimony regarding his physical impairments because the record showed that

3   plaintiff "did not have a significant problem ambulating," and because plaintiff failed to seek

4   treatment. AR. 29.

5          The ALJ stated that plaintiff "did not have significant trouble ambulating." AR. 29.  As

6   evidence, she cites a May 2013 psychological evaluation with a psychologist who noted that

7   plaintiff "shows no difficulty in ambulating." *Id.* However, the psychologist actually stated "no

8   ambulation restrictions noted." AR. 472.  In this instance, the ALJ's misquote of the evidence is

9   problematic because it is not clear what an "ambulation restriction" is, especially in the context

10  of a psychological evaluation. *See* AR. 469-77.  It is also problematic because on the same page

11  of her decision, the ALJ makes note of medical records and imaging, also from May 2013, which

12  "showed decreased range of motion on flexion and extension of the left ankle… [and]

13  degenerative spurs and soft tissue swelling," as well as limitations to walking and standing. AR.

14  30, 463; *see* AR. 462-68.  It is unclear why the ALJ relied on the psychological evaluation rather

15  than the physical functional evaluation which occurred at the same time. AR. 463; *see generally*

16  AR. 462-68. The ALJ may "draw inferences logically flowing from the evidence," but may not

17  speculate. *Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)* (*citing Beane v. Richardson*,

18  457 F.2d 758 (9th Cir. 1972); *see also* SSR 86-8, 1986 SSR LEXIS 15 at *22.

19         The ALJ also stated that plaintiff reported that he "walks daily." AR. 30. The record cited

20  by the ALJ is a form questionnaire filled out by plaintiff, but does not state how long or how far

21  plaintiff walks. AR. 337.  Plaintiff testified that he was able to walk only short distances. AR 87-

22  88. Without more, plaintiff's report that he "walks daily" is not inconsistent with his testimony

23  that he can walk only short distances.

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 5

1    The ALJ states that plaintiff maintained good strength of his low extremities and good

2    pedal push with both feet, but does not state how these findings relate to plaintiff's ambulation.

3    AR. 30; 490. Here the ALJ cites two portions of the record which are merely duplicates of each

4    other. AR. 490; 616-19. The second record, although from the same doctor on the same day,

5    contains additional information from the intake nurse stating that plaintiff's left Achilles tendon

6    has hurt for two days and that pain increases with ambulation. AR. 619. As discussed above, the

7    ALJ may "draw inferences logically flowing from the evidence," but may not speculate. *Sample,*

8    *supra,* 694 F.2d at 642; SSR 86-8, 1986 SSR LEXIS 15 at *22. Here, the ALJ does not offer

9    evidence supporting her conclusion that good strength and pedal push are inconsistent with

10   plaintiff's testimony that he can only walk limited distances.

11       The ALJ states that "in early 2014, the claimant walked independently." AR. 30. The

12   cited record is in reference to plaintiff's three-day inpatient hospital stay for a surgery that was

13   terminated when plaintiff experienced acute hypoxic respiratory failure. AR. 542-71. In this

14   instance, plaintiff was a high fall risk and the nurse noted his progress in being able to ambulate

15   independently.  AR. 554. The ALJ fails to demonstrate how plaintiff's ability to walk

16   independently when he is at high risk for falling undermines his testimony that he can only walk

17   short distances. AR. 29.

18       Finally, the ALJ stated that plaintiff "did not report problems with ambulation" before he

19   began using the wound vacuum. AR. 30. The ALJ cites to B26F/17-19, however this record only

20   extends to B26F/12. *See* AR. 849-60. Therefore, the record the ALJ cites does not exist. This

21   Court cannot speculate as to which evidence the ALJ intended to use in support of her statement

22   that plaintiff did not report problems with ambulation. An unsupported assertion cannot be

23

24

1  supported by substantial evidence and is therefore not a clear and convincing reason for rejecting

2  plaintiff's testimony regarding his ability to walk only short distances.

3        The ALJ also rejected plaintiff's testimony regarding his physical impairment citing "the

4  lack of treatment [plaintiff] had for nine months." AR. 30. Specifically, the ALJ noted that

5  plaintiff's decision to delay surgery until the end of summer "implie[d] that his pain and

6  limitations were not so significant as he was willing to delay it for months." AR. 30. However,

7  plaintiff's initial surgery was interrupted due to acute respiratory failure stemming from a

8  problem with anesthesia. AR. 542, 681. Moreover, plaintiff had already undergone multiple

9  surgeries for the same Achilles impairment. AR. 29. Social Security regulations specifically state

10 that good cause may be found for failure to seek treatment where "surgery was previously

11 performed with unsuccessful results and the same surgery is again being recommended for the

12 same impairment." 20 C.F.R § 404.1530(c)(3). Plaintiff's inconsistent medical treatment is

13 discussed in more detail below, as the ALJ also made note of plaintiff's intermittent treatment

14 compliance in regards to his mental impairment. AR. 32-33.

15       *B. The ALJ rejected plaintiff's testimony regarding his mental impairment.*

16       The ALJ found that plaintiff had the severe mental impairments of cognitive disorder,

17 bipolar disorder, post-traumatic stress disorder, and personality disorder. AR. 24. She rejects

18 plaintiff's testimony regarding the limiting effects of his mental impairment because it is not

19 consistent with the overall treatment record for the following reasons: that plaintiff only sought

20 treatment when required to do so to maintain his state benefits; that plaintiff had improvement in

21 symptoms when not on medications; that plaintiff's daily activities are inconsistent with his

22 reports of severely limiting symptoms; that plaintiff has a limited work history; and that plaintiff

23 has a criminal history. AR. 32-33.

24

1              *1.   Treatment only to maintain state benefits.*

2          The ALJ stated that plaintiff was "frustrated as his state benefits were cut off because he

3  was not in counseling, and he was upset that he was not assigned to a counselor at Sound Mental

4  Health." AR. 32.  She concluded that plaintiff "only sought counseling when he needed to do so

5  to maintain his state benefits." *Id.* However, the record reads: "[plaintiff was] upset about not

6  being assigned to a counselor. DSHS has cut off his funds because he is not in counseling." AR.

7  700.

8          The ALJ mischaracterizes the report.  The report does not say that plaintiff only sought

9  counseling when he needed to maintain benefits, and the ALJ offers no other evidence to support

10 her assertion that plaintiff only sought counseling to maintain his state benefits. As discussed

11 below, the record is clear that plaintiff has had difficulty keeping medical appointments due to

12 his mental health condition, as well as difficulties with insurance. The record also shows that

13 plaintiff has received mental health treatment and counseling for many years before he applied

14 for state benefits. *See* AR. 392, 441, 470.  The ALJ does not reconcile these factors with her

15 assertion that plaintiff only sought treatment to maintain state benefits.  Therefore, the ALJ's

16 statement that plaintiff only sought treatment in order to maintain his state benefits is not

17 supported by substantial evidence.

18             *2.   Inconsistent treatment compliance.*

19         The ALJ stated that plaintiff's symptoms improve when he takes medication and that he

20 inconsistently sought treatment. AR. 32.  However, neither improvement with treatment, nor a

21 failure to follow prescribed treatment is necessarily inconsistent with disability.

22         Federal Regulations state that a claimant "must follow treatment prescribed by [their]

23 medical source(s) *if this treatment is expected to restore [their] ability to work.*" 20 C.F.R. §

24

404.1530(a) (emphasis added). According to agency rules, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 SSR LEXIS 4 at *20; *see also* 20 C.F.R. § 404.1530; *Molina v. Astrue,* 674 F.3d 1104, 1113, (9th Cir. 2012). [1] Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988).

When a mental illness is involved, it can be illogical to assume that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Moreover, plaintiff was found to have a full-scale IQ of sixty-five. AR. 25. The Administration has found that individuals with an IQ between sixty and sixty-nine are "ordinarily expected to [understand and carry out simple instructions] under somewhat closer

---

[1] SSR 96-7p was rescinded March 2016, seven months after the ALJ's September 2015 decision. However, SSR 16-3p, which superseded 96-7p, similarly requires the ALJ to consider possible reasons for treatment non-compliance.

supervision than required of an individual with a higher IQ." SSR 85-16, 1985 SSR LEXIS 18, *7-8. When a person suffers from a mental impairment, the individual may not have the requisite insight into his or her condition to seek or comply with treatment, or may not have the memory and focus to have the ability to take a medication three times a day, which can indicate a greater severity of impairment. *See Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124.

Here, the ALJ did not consider plaintiff's cognitive impairment or need for additional supervision when discrediting his testimony due to his lack of treatment. AR. 28-29; 32. She also failed to evaluate whether plaintiff's improvement on medication would restore his capacity to work. Plaintiff testified to not being able to travel alone, relying on others for rides and to assist him with bus travel, needing to be reminded to take medications, having difficulty with insurance, not being assigned a counselor, and high turnover of counselors. AR.84-85, 90-92, 109. The ALJ did not address the reasons for plaintiff's inconsistent treatment, and therefore did not give clear and convincing reasons for rejecting plaintiff's testimony based on his inconsistent treatment.

### 3. *Activities of daily living.*

The ALJ also stated that plaintiff's reported activities of daily living are inconsistent with his allegations of severely limiting symptoms. AR. 33. The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet 'the threshold for transferable work skills.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*citing Fair v. Bowen,* 885 F.2d 597, 603, (9th Cir. 1989). Furthermore, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to

1    conclude that a claimant's daily activities warrant an adverse determination regarding if a

2    claimant's statements should be credited. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v.*

3    *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

4         Here, the ALJ lists numerous daily activities and states they are "inconsistent with both

5    [plaintiff's] allegations [of] isolation, problems dealing with others, as well as his alleged

6    physical limitations." AR. 33. However, this statement is conclusory as the ALJ does not make

7    specific findings relating to the daily activities.  Moreover, she does not determine whether the

8    daily activities meet the "threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639.

9    The Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain

10   daily activities  .  .  .  .  does not in any way detract from her credibility as to her overall

11   disability." *Id.*  Therefore, the ALJ has not provided clear and convincing reasons for rejecting

12   plaintiff's credibility in regards to his daily activities.

13              *4.   Limited work history.*

14        The ALJ stated that plaintiff's "poor work history implies a lack of motivation to work."

15   AR. 33.  As evidence, the ALJ notes that plaintiff "told his counselor that he is not interested in

16   employment." AR. 33.  The cited record states "Clinician reviewed all the svs provided at VCC.

17   Clt was very interested in the art grps and the mural project. Not interested in employment SG."

18   AR. 727. In this context, SG may stand for support group. Plaintiff also reported at an intake

19   assessment that one of his goals is to "achieve the ability to work again." AR. 754. At his

20   hearing, plaintiff stated he is "trying to become workful [sic] again, because I want to work;

21   there's nothing more in my life than to be right." AR. 91. It appears the ALJ has isolated one

22   reference, which is not an entirely clear reference, as evidence that plaintiff's lack of motivation,

23   rather than his medical impairments, prevents him from working. Therefore, the ALJ has not

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

1    provided substantial evidence to justify rejecting plaintiff's credibility based on his limited work

2    history.

3         *5.  Criminal history.*

4         The ALJ notes that claimant's criminal history "likely affects his ability to find work."

5    AR. 33.  The ALJ correctly notes that a criminal history is not a disability factor but may be

6    taken into account in determining credibility. *Id.* Some courts have found that all felony

7    convictions constitute a proper basis to discount a claimant's statements in the Social Security

8    context. *See, e.g., Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001); *Williams v. Comm'r*

9    *of Soc. Sec.*, 423 F.Supp.2d 77, 84 (W.D.N.Y. 2006). However, the Ninth Circuit has limited

10   "such rationale to convictions involving moral turpitude; thus mere assault convictions are not a

11   proper basis for [an] ALJ's adverse credibility finding." *Albidrez v. Astrue*, 504 F. Supp. 2d 814,

12   822 (C.D. Cal. 2007).   Moreover, it appears the ALJ is not considering plaintiff's criminal

13   history in terms of his credibility but acknowledging that the criminal history will impact

14   plaintiff's employment opportunities. AR. 33. Therefore, plaintiff's criminal history alone is not

15   a clear and convincing reason to reject plaintiff's testimony regarding the severity of his

16   impairments.

17        *C.  Whether the ALJ's credibility analysis is harmless error.*

18        The Ninth Circuit has "recognized that harmless error principles apply in the Social

19   Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v.*

20   *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court

21   noted that "several of our cases have held that an ALJ's error was harmless where the ALJ

22   provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided

23   valid reasons that were supported by the record." *Id.* (citations omitted). Here, the ALJ did not

24

1    provide a valid reason for an adverse credibility determination because her reasons were not

2    supported by substantial evidence in the record.

3            The Ninth Circuit states that "in each case we look at the record as a whole to determine

4    [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has

5    "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to

6    the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*,

7    533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to

8    follow the rule that courts must review cases "'without regard to errors' that do not affect the

9    parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)

10   (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

11           Plaintiff based his disability claim on both mental and physical impairments. AR. 24.

12   Plaintiff's testimony as to the limiting effects of his combined impairments, if given greater

13   credibility, may have impacted the limitations the ALJ included in plaintiff's RFC and lead to a

14   different disability determination. At the hearing, the ALJ suggested alternative limitations to be

15   included in the RFC. AR. 105.  These limitations were the ability to elevate one leg off and on

16   for two hours, and missing work two times per month. *Id.* The vocational expert opined that

17   either of these limitations alone would have resulted in no jobs being available in the national

18   economy. *Id.*

19           It is unclear why the ALJ did not ultimately include these limitations in plaintiff's RFC.

20   However, a more favorable credibility determination may have resulted in these limitations being

21   included, which would have led to a determination that plaintiff is disabled.  Therefore, the

22   ALJ's adverse credibility determination is not "inconsequential to the ultimate nondisability

23

24

1  determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Comm'r*,

2  *Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)).

3      **II.    Plaintiff's remaining arguments.**

4      Plaintiff also alleges the ALJ erred in her steps four and five analysis, and in failing to

5  credit treating physicians with greater weight than non-examining physicians. Dkt. 15, p. 1.

6  Because further consideration of plaintiff's credibility is dispositive and may impact the ALJ's

7  assessment of these issues, this Court recommends that the district court remand this case for

8  further consideration.

9                                CONCLUSION

10      Based on these reasons, and the relevant record, the undersigned recommends that this

11  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to

12  the Acting Commissioner for further proceedings consistent with this Report and

13  Recommendation. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

14      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

15  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

16  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

17  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

18  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 17**,**

19  2018, as noted in the caption.

20      Dated this 30th day of July, 2018.

21

22                                    J. Richard Creatura
                                      United States Magistrate Judge
23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14